**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| NOLD SLEY AMOUR SEHOLO-MALANDA )<br>Petitioner, )<br><br>v. )<br><br>DAVID WESLING, Field Office Director, )<br>DAVID VENTURELLA, Acting Director U.S. )<br>    Immigration and Customs )<br>    Enforcement, )<br>MARKWAYNE MULLIN, Secretary of Homeland )<br>    Security, and )<br>TODD BLANCHE, U.S. Attorney General ) | Case No. **1:26-cv-13086** |

**INTRODUCTION**

1. Nold Sley Amour Seholo-Malanda is a Congolese national and asylum seeker. He is the father of a United States Citizen child with autism.

2. When Petitioner entered the United States without inspection around January 12, 2021, he was placed into removal proceedings. *See* Ex. A, Notice to Appear.

3. On May 31, 2024, Petitioner's removal proceedings were terminated. *See* Ex. B, Automatic Case Information System ("ACIS").

4. On information and belief, he was unlawfully detained by federal immigration agents on July 3, 2026.

5. Accordingly, to vindicate Petitioner's constitutional rights, this Court should grant the instant petition for a writ of habeas corpus.

6. Petitioner asks this Court to find that he was unlawfully detained and order his release.

7. Furthermore, this Court should find that ICE did not have the authority to detain Petitioner and that his detention violates the asylum statute. *See Doe v. Jamison*, 26-1906, 2026 U.S. Dist. LEXIS 68893 at *14 (E.D.Pa. Mar. 31, 2026) ("Petitioner was entitled, under § 1158, to an interview and adjudication of his asylum claim prior to his detention.")

## JURISDICTION AND VENUE

8. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*.

9. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus) and 28 U.S.C. § 1331 (federal question).

10. Under 28 U.S.C. § 2241, "[w]rits of habeas corpus may be granted by . . . the district courts within their respective jurisdictions" when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." This jurisdiction includes "writs of habeas corpus filed by immigration detainees before and after a final order of removal has been issued." *Dambrosio v. McDonald*, 2025 U.S. Dist. LEXIS 67848 at * 4 (D. Mass Apr 9, 2025) (citing *Zadvydas v. Davis*, 533 U.S. 678, 688, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001); *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018)).

11. The First Circuit has routinely held that "district courts retain jurisdiction over challenges to the legality of detention the immigration context." *Aguilar v. U.S. Immigr. & Customs Enf't div. of Dep't of Homeland Sec.*, 510 F.3d 1, 11 (1st Cir. 2007) (citing *Hernandez v. Gonzales*, 424 F.3d 42 (1st Cir. 2005) (holding that detention claims are independent of

removal proceedings and, thus, not barred by section 1252(b)(9))). Specifically, "constitutional challenges regarding the availability of bail" fall within this Court's habeas review. *Id.* (citing *Demore v. Kim*, 538 U.S. 510 (2003)).

12. Because Petitioner is solely contesting his ongoing detention through his Petition, this Court has jurisdiction and maintains the authority to order him immediately released. *See contra Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) ("[Section] 1252(b)(9) 'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision to seek removal,' or 'the process by which removability will be determined'" (ellipses omitted) (quoting *Jennings*, 583 U.S. at 294-95)).

13. In the alternative, this Court has jurisdiction and maintains the authority to order Petitioner be provided with a bond hearing in the Immigration Court where DHS bears the burden of demonstrating he is a danger to the community or a flight risk. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021) ("[D]ue process requires the government to either (1) prove by clear and convincing evidence that [he] poses a danger to the community or (2) prove by a preponderance of the evidence that [he] poses a flight risk.").

14. The legal issue here is "wholly collateral to the removal process." *Gicharu v. Carr*, 983 F.3d 13, 16 (1st Cir. 2020).

15. Venue is proper because Petitioner is in the custody of the Immigration and Customs Enforcement in Massachusetts, which is within the jurisdiction of this District. *See Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) ("The plain language of the habeas statute thus confirms the general rule that . . . jurisdiction lies in only one district: the district of confinement.") (*cited in Trump v. J.G.G.*, 145 S. Ct. 1003, 1006-07 (2025) (per curiam)).

## PARTIES

16. The Petitioner Nold Sley Amour Seholo-Malanda is a Congolese national and asylum seeker.

17. Respondent David Wesling is the New England Field Office Director for U.S. Immigration and Customs Enforcement. Respondent Westling is a legal custodian of Petitioner.

18. Respondent David Venturella is the Acting Director for U.S. Immigration and Customs Enforcement. Respondent Venturella is a legal custodian of Petitioner.

19. Respondent Markwayne Mullin is the U.S. Secretary of Homeland Security. Respondent Mullin is a legal custodian of Petitioner.

20. Respondent Todd Blanche is the U.S. Attorney General. Respondent Blanche is a legal custodian of Petitioner.

21. All respondents are named in their official capacities.

## FACTUAL ALLEGATIONS

22. Petitioner, Nold Sley Amour Seholo-Malanda, is a native and citizen of Republic of Congo He entered the United States without inspection on or about January 12, 2021. *See* Ex. A, Notice to Appear.

23. Petitioner was placed into proceedings at the Chelmsford Immigration Court, but his proceedings were terminated on May 31, 2024. *See* Ex. B, ACIS.

24. On information and belief, Petitioner was taken into custody on July 3, 2026 and is being detained in Massachusetts. *See* Attached Ex. C, Online Detainee Locator System ("ODLS").

25. On information and believe, immigration officers do not have a warrant for his arrest at the time of the arrest.

**LEGAL BACKGROUND**

A. **PETITIONER IS NOT AN APPLICANT FOR ADMISSION WHO IS SUBJECT TO MANDATORY DETENTION UNDER 8 U.S.C. § 1225.**

26. ***Loper-Bright* and Deference Post-*Chevron*.** In *Loper Bright Enters. v. Raimondo*, the Supreme Court explicitly overruled the Chevron doctrine. 603 U.S. 369 (2024). As the majority criticized, "although exercising independent judgment is consistent with the 'respect' historically given to Executive Branch interpretations, *Chevron* insist[ed] on much more. It demand[ed] that courts mechanically afford binding deference to agency interpretations including those that have been inconsistent over time." *Id*. at 399 (emphasis in the original). The Court continued: "Still worse, it forces courts to do so even when a pre-existing judicial precedent holds that the statute means something else—unless the prior court happened to also say that the statute is 'unambiguous.'" *Id*.

27. Former EOIR Acting Director Sirce E. Owen issued a Policy Memorandum which seemed to acknowledge that this is a pervasive issue, stating: "[W]hen conflicting Board precedents exist, Immigration Judges are uncertain as to which line of precedent they are obligated to follow." Sirce E. Owens, Conflicting Precedents of the Board of Immigration Appeals, PM 25-34, July 3, 2025. The inconsistent and constantly contradictory decisions from the Attorney General and BIA provide a prime example of how the *Chevron* doctrine and deference to Executive Branch interpretations eliminated independent judgment and asked immigration judges to ignore judicial precedent.

28. This is further exemplified by *Hurtado*. *See* 29 I&N Dec. 216. Despite decades of precedent allowing for bond hearings for noncitizens that entered without inspection ("EWI") or are present without admission ("PWA"), the Board decided that "[u]nder the plain reading of the INA . . . aliens who are present in the United States without admission are applicants

for admission . . . and must be detained for the duration of their removal proceedings." *Id*. at 220. The Board then contradicts its finding that a "plain reading" of the statute exists by admitting that "the issue of statutory interpretation is complicated by a patchwork of statutes implemented at different times and intended to address different issues." *Id*. at 227.

29. When the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA) was passed and regulations were promulgated, the Attorney General explicitly stated that "inadmissible aliens, except for arriving aliens, have available to them bond redetermination hearings before an immigration judge." Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

30. The interpretation adopted in *Matter of Hurtado* stands in stark contrast to decades of precedent, even being described in a leaked ICE Memorandum from July as a "change in legal interpretation." *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, American Immigration Lawyers Association, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited Oct. 16, 2025) [https://perma.cc/4Q6X-GAZC].

31. In recent weeks, multiple district courts within the First Circuit have found that the BIA's decision in *Hurtado* is not owed deference and that it is inconsistent both with precedent and a plain reading of the statute. *See Chogllo Chafla v. Scott*, 2025 U.S. Dist LEXIS 184909 at * 21-24 (D. Me. Sept. 22, 2025); *Sampiao v. Hyde,* 2025 U.S. Dist. LEXIS 175513 at * 24 n. 11 (D. Mass. Sept. 9, 2025); *Hilario Rodriguez v. Moniz*, 2025 U.S. Dist.

LEXIS 200638 at *4 n. 4 (D. Mass. Sept. 18, 2025); Jimenez *v. FCI Berlin,* 2025 U.S. Dist. LEXIS 176165 at * 27 n. 9 (D.N.H. Sept. 8, 2025).

32. **Plain Reading and the Canon Against Surplusage.** The Supreme Court ruled that ""the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013).

33. Judge Murphy dedicated a significant portion of *Romero* to what a plain reading of this statute means, elaborating on the "seeking admission" language and explaining why this language is crucial under the canon against surplusage. *See* __ F.Supp.3d __, 2025 U.S. Dist. LEXIS 160622 at *18-28. The Court started by analyzing what "applicant for admission" and "seeking admission" mean in the context of immigration law. *Id.* at *20-21.

34. Because the phrase "seeking admission" is not defined in the statute, the Court looked elsewhere for guidance. *See id*. The Court considered that the Board acknowledged that "one can 'seek admission' from anywhere in the world." *Id*. at * 20 (citing *Matter of Lemus-Losa*, 25 I&N Dec. 734, 741 (BIA 2012)). 8 U.S.C. § 1225(a)(3) provided another example of the statute using the terms "applicants for admission" and "seeking admission" as separate ideas. *See id*. at *21. If the term "applicant for admission" encompassed "seeking admission," then the statute should have read "All aliens (including alien crewmen) who are applicants for admission shall be inspected by immigration officers." *See contra* 8 U.S.C. § 1225(a)(3) (showing that the actual statute includes additional language). Judge Murphy then created a "comparable construction" table to help explain why the extra

language in both § 1225(b)(2)(A) and § 1225(a)(3) matters through "more familiar language." *Romero*, __ F.Supp.3d __, 2025 U.S. Dist. LEXIS 160622 at * 23-24.

35. The recent passage of the Laken Riley Act ("LRA") further demonstrates the "complicated . . . patchwork of statutes," especially related to the detention of noncitizens. *Matter of Yajure Hurtado*, 29 I&N Dec. at 22.; *see* Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025) (adding 8 U.S.C. § 1226(c)(1)(E)). The LRA, which was enacted in January of this year, applies to a very specific subsection of inadmissible noncitizens—noncitizens present without admission or parole, noncitizens admitted due to fraud or willful misrepresentation, and noncitizens without valid documents—that commit certain crimes. See 8 U.S.C. § 1226(c)(1)(E)(i)-(ii).

36. If the Board in *Matter of Yajure Hurtado* is correct and a plain reading of the INA meant that all noncitizens inadmissible due to being present without admission or parole or lacking valid documents were ineligible for bond, then the LRA would be rendered "superfluous." *Gomes*, 2025 U.S. Dist. LEXIS 128085 at * 17 (D. Mass. July 7, 2025); *see Romero*, __ F.Supp.3d __, 2025 U.S. Dist. LEXIS 160622 at *26-28.

37. Furthermore, despite the Board's assertion that a plain reading of 8 U.S.C. § 1225 includes all noncitizens present without admission or parole, Supreme Court disagrees: "In sum, U.S. immigration law authorizes the Government to detain certain aliens *seeking admission into the country* under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289 (emphasis added).

B. **MANDATORY DETENTION IS UNCONSTITUTIONAL AS APPLIED HERE BECAUSE PETITIONER IS NOT AN APPLICANT FOR ADMISSION AT THE THRESHOLD OF ENTRY**

38. The Supreme Court has long held that "The Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these [noncitizens] from deprivation of life, liberty, or property without due process of law." *Mathews v. Diaz*, 426 U.S. 67, 77 (1976). It continued: "Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection." *Id.*; *see Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States. . ."). The Supreme Court affirmed its previous holdings in *Reno v. Flores*, finding that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings." 507 U.S. 292, 306 (1992).

39. For nearly 50 years, the standard to determine a violation of procedural due process requires balancing three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 474 U.S. 319, 335 (1976). The First Circuit has previously applied the three-part *Mathews* test in immigration custody matters. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 27-35 (1st Cir. 2021).

40. **Private Interests.** Petitioner's private interests in this matter concern "the most elemental of liberty interests—the interest in being free from physical detention by one's own government" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). His private interests are amplified because "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425

(1979). The First Circuit also considered that the "exact length of detention . . . is impossible to predict and can be quite lengthy." *Hernandez-Lara*, 10 F.4th at 29.

41. **Risk of Erroneous Deprivation.** Courts across the country have found that the risk of erroneous deprivation of rights is high regarding immigration detention proceedings and issued temporary restraining orders *See, e.g.*, *Flores v. Noem*, No. 25-2490, 2025 LX 444718 (C.D. Cal. Sept. 29, 2025) (Birotte, J.); *Lopez v. Hardin*, No. 25-830, 2025 WL 2732717 (M.D. Fla. Sept. 25, 2025) (Dudek, J.); *Maldonado v. Olson*, No. 25-3142, 2025 WL 2374411 (D. Minn. Aug. 15, 2025) (Nelson, J.).

42. **Competing Interests.** The Supreme Court found that immigration detention, as a civil matter, is assumed to be "nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690. The government interest in detaining a noncitizen falls clearly within two categories: dangerousness or flight risk. *See id.* at 690-91; *see also Hernandez-Lara*, 10 F.4th at 33 (finding that detention is limited to "only those noncitizens who are dangerous or a flight risk"). Because the First Circuit found that due process requires "that the government must bear the burden of proving dangerousness or flight risk in order to continue detaining a noncitizen under section 1226(a)," Respondents' competing interests are sufficiently protected by the procedures governing a bond hearing. *Hernandez-Lara*, 10 F.4th at 39.

C. <u>**RESPONDENT'S DETERMINATION TO TAKE PETITIONER INTO CUSTODY VIOLATED DUE PROCESS AS AN ABUSE OF ICE'S DISCRETION**</u>

43. According to 8 C.F.R. § 236.1(c)(8), an ICE officer with the authority to issue a warrant also has the authority to release a noncitizen that does not pose a danger to the community and is not a flight risk. At this initial custody determination, the ICE officer may release a noncitizen on a minimum $1,500 bond or conditional parole. 8 U.S.C. § 1226(a)(2)(A)-(B).

44. If an ICE officer determines that a noncitizen is a danger to the community and/or poses a flight risk, then the ICE officer may detain the noncitizen for further proceedings. At this point, the noncitizen may seek a custody redetermination hearing before an immigration judge. *See* 8 C.F.R. § 236.1(d)(1).

45. When the Board of Immigration Appeals ("BIA") was creating the standard governing custody redetermination hearings before an immigration judge, it initially adopted the language from 8 C.F.R. § 236.1(c)(8). *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021).

46. However, when the First Circuit considered this standard, it found that the Constitution required something different, namely that the government bears the burden of demonstrating dangerousness and flight risk. *See id.* at 41. The Court then set forth the following: "[D]ue process requires the government to either (1) prove by clear and convincing evidence that [a noncitizen] poses a danger to the community or (2) prove by a preponderance of the evidence that [a noncitizen] poses a flight risk." *Id.*

47. **Initial Custody Determination.** A District Judge in South District of New York noted that, although the Government has "significant discretion" under 8 U.S.C. § 1226, "Due Process still requires that such discretion actually be exercised—i.e., that some determination actually be made." *Huamani v. Francis*, 25-cv-8110 (LJL), 2025 U.S. Dist. LEXIS 219101 * 18 (S.D.N.Y. Nov. 4, 2025). Although the underlying facts greatly vary — in *Huamani*, the noncitizen was detained while leaving an immigration hearing, but Petitioner here was detained with a pending asylum application — the requirement remains the same: DHS is required to <u>actually exercise</u> its discretion and make a determination. *See id*. Here, no evidence exists to suggest that the DHS ever considered whether Petitioner is a flight risk

or dangerous, thus necessitating his detention. ICE made no mention of his pending asylum application. It is unclear what ICE relied on to determine that he is now a flight risk or dangerous.

48. **Post-Hoc Rationalization.** As the Supreme Court has held: "The basic rule here is clear: An agency must defend its actions based on the reasons it gave when it acted. This is not the case for cutting corners to allow DHS to rely upon reasons absent from its original decision." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 24 (2020). Because the only constitutional rationale for detaining a noncitizen is that they either pose a flight risk or danger to the community, ICE detaining Petitioner *and then* initiating proceedings is incredibly problematic. On information and belief, ICE did not make any statements or indicate that he was being detained because he was determined to be a danger to the community. This leaves only one possible justification: ICE must have determined that Petitioner was a flight risk. However, this justification begs the question: what was Petitioner a flight risk from. He is not in proceedings, so he could not be a flight risk from removal proceedings. He was already willingly availing herself of USCIS's jurisdiction with regard to his asylum application. Petitioner had not been scheduled for an asylum interview that he sought to evade. Where Petitioner has no current removal proceedings and where no Notice to Appear has been issued and docketed, this Court should find that his current detention is improper.[1] This Court should adopt District Judge Cynthia M. Rufe from the Eastern District of Pennsylvania and find: **"[T]he arrest and detention of affirmative applicants for asylum, who are patiently waiting for years-long delays in asylum adjudications, in violation of the INA, is an abrupt policy change. . . . This**

---

[1] Petitioner is not challenging DHS's authority to bring removal proceedings, which is unreviewable in habeas proceedings.

**policy change, coupled with the failure to comply with the INA's asylum timeline, as applied to Petitioner and those similarly situated, strips § 1158 of its meaning**." *Doe v. Jamison*, 2026 U.S. Dist. LEXIS 68893 at \*15. Precedent is clear: "*post hoc* rationalizations of the agency . . . cannot serve as a sufficient predicate for agency action." *American Textile Mfrs. Institute, Inc. v. Donovan*, 452 U. S. 490, 539 (1981).

D.  <u>**WAIVER OF EXHAUSTION OF ADMINISTRATIVE REMEDIES**</u>

49. Exhaustion of administrative remedies falls within two distinct categories: statutory and common law. *See Brito v. Garland*, 22 F.4th 240, 255 (1st Cir. 2021). Where, as here, the statute does not require administrative exhaustion, "sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992), *cited in Morgan v. Garland*, 120 F.4th 913, 927 (1st Cir. 2024).

50. Decades of precedent stands for the proposition that "*generally speaking*, a plaintiff's failure to exhaust his or her administrative remedies precludes the plaintiff from obtaining federal review of claims that would have properly been raised before the agency in the first instance." *Brito,* 22 F.4th at 255 (emphasis added); *see McCarthy*, 503 U.S. at 144-45 ("This Court long has acknowledged the *general rule* that parties exhaust prescribed administrative remedies before seeking relief from the federal courts.") (emphasis added).

51. As the use of the phrases "generally speaking" and "general rule" imply, there are exceptions to the exhaustion requirement. *See McCarthy*, 503 U.S. at 146 ("This Court's precedents have recognized at least three broad sets of circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion.").

52. Waiver of the exhaustion requirement is justified in three circumstances: (1) "when unreasonable or indefinite delay threats unduly to prejudice the subsequent bringing of a

judicial action," (2) "if a substantial doubt exists about whether the agency is empowered to grant meaningful redress," and (3) "if the potential decisionmaker is biased or can be shown to have predetermined the issue." *Portela-Gonzalez v. Secretary of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997) (citing *McCarthy*, 503 U.S. at 145-48). This third circumstance is commonly used where seeking administrative remedies would be "futile." *Portela-Gonzalez*, 109 F.3d at 78; *McCarthy*, 503 U.S. at 148.

53. **Futility.** The Board of Immigration Appeal's recent decision in *Matter of Yajure Hurtado* singlehandedly demonstrates why exhaustion is futile. On September 5, 2025, the Board issued a decision finding that Immigration Judges "have no authority to redetermine the custody conditions of an alien who crossed the border unlawfully without inspection." *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 228 (BIA 2025). Prior to *Matter of Yajure Hurtado*, requiring Petitioner to first seek a custody redetermination hearing with the immigration court was inefficient, prejudicial, and needlessly delayed the release of noncitizens; however, this ruling further solidified that seeking a custody redetermination hearing with the Immigration Court before a finding of jurisdiction by the federal court is meaningless, as is appealing its denial to the Board of Immigration Appeals. *See Romero v. Hyde,* __ F.Supp.3d __, 2025 U.S. Dist. LEXIS 160622 at *14 (D. Mass. Aug. 19, 2025) (noting that "the prospect of an unaffected decisionmaker seems unrealistically thin" for bond hearings at the Chelmsford Immigration Court).

54. **Unreasonable and Indefinite Delay.** In the current political and legal climate, requiring Petitioner to first seek a custody redetermination hearing with the immigration court is inefficient, prejudicial, and needlessly delays his release. Under *Matter of Yajure Hurtado*, DHS will argue Petitioner is detained under § 1225 and an immigration judge will find him

ineligible for custody redetermination. By requiring Petitioner exhaust administrative remedies, Petitioner must wait until after he is denied bond to begin his habeas proceedings. In *Sampiao*, the Court noted that "Irreparable harm may be established where a petitioner will be incarcerated or detained pending the exhaustion of administrative remedies." 2025 U.S. Dist. LEXIS 175513 at *15. The Court further noted that "the average processing time for bond appeals exceeded 200 days in 2024." *Id.* at * 16 (citing *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1248 (W.D. Wash. 2025)). Without this Petition, Respondents would have the ability to transfer Petitioner within the United States with no oversight for over 200 days, between his detention, bond denial, and appeal. *See id.* Enforcing an administrative remedies exhaustion requirement in ICE detention proceedings would only serve to prejudice noncitizens and allow the government free reign to transfer, detain, and otherwise infringe on the liberty of noncitizens without checks and balances.

## **CLAIMS FOR RELIEF**

## **COUNT I: VIOLATION OF THE FIFTH AMENDMENT - DUE PROCESS CLAUSE**

55. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

56. Petitioner has a fundamental interest in liberty and being free from official restraint.

57. The government's detention of Petitioner without a bond redetermination hearing to determine whether he is a flight risk or danger to others violates his right to due process.

## **COUNT II: VIOLATION OF 8 U.S.C. § 1226(a) – UNLAWFUL DENIAL OF RELEASE ON BOND**

58. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

59. Mandatory detention does not apply to Petitioner because he is not an applicant for admission seeking admission under 8 U.S.C. § 1225(b)(2). Instead, Petitioner's detention is governed by 8 U.S.C. § 1226 and makes him eligible for a custody redetermination hearing on the merits in front of the Immigration Court.

60. Nonetheless, the Board of Immigration Appeals has issued a decision binding on all IJs, rendering Petitioner ineligible for a bond hearing. Given the clear language in the *Hurtado* decision, there is no question that an IJ will find he or she does not have jurisdiction to consider Petitioner for release on bond.

## COUNT III: VIOLATION OF 8 U.S.C. §1158 – ASYLUM PROCEDURES

61. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

62. The government's detention of Petitioner while he has a pending affirmative asylum application and is not in removal proceedings is unlawful.

## PRAYER FOR RELIEF

Wherefore, Petitioner respectfully requests this Court to grant the following:

1) Assume jurisdiction over this matter;

2) Order that Petitioner shall not be removed from the United States nor transferred outside the District of Massachusetts;

3) Pursuant to 28 U.S.C. § 2243, issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

4) Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment and 8 U.S.C. § 1226(a);

5) Issue a Writ of Habeas Corpus ordering Respondents:

(a) to immediately release Petitioner from detention;

(b) if at the time of the hearing for this habeas the Court has already ordered Petitioner released under its inherent Article III authority, to not re-detain Petitioner;

(c) in the alternative, to provide Petitioner an individualized bond hearing before an Immigration Judge on the merits in accordance with *Hernandez-Lara v Lyons*, 10 F.4th 19 (1st Cir. 2021), and 8 U.S.C. § 1226, at a time and in a manner that places Petitioner in the same position he would be if not for the Respondents' unlawful conduct, and, if the Immigration Judge grants bond, to immediately accept payment of the bond and release Petitioner from detention,

(d) return all of Petitioner's possessions to him upon release.

6) Award Petitioner's attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

7) Grant any further relief this Court deems just and proper.

Date: July 3, 2026

Respectfully Submitted,

Amelia L. Ritenour, Esq.
Haven Immigration Law, LLC
132 Spring St, Floor 1
Portland, ME 04101
ar@im.law
+1 207 383 1898
*Counsel for Petitioner*

## 28 U.S.C. § 2242 VERIFICATION STATEMENT

I represent Petitioner, Nold Sley Amour Seholo-Malanda, and submit this verification on their behalf. I hereby verify under penalty of perjury that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Date: July 2, 2026

Respectfully Submitted,

Amelia L. Ritenour, Esq.

Haven Immigration Law, LLC
132 Spring St, Floor 1
Portland, ME 04101
ar@im.law
+1 207 383 1898
*Counsel for Petitioner*